UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Joshua Adam Brooks,

        Plaintiff,                          Case No. 22-cv-2011 (JWB/LIB)

    v.

                                    **REPORT AND RECOMMENDATION**

David A. Lindlbauer, et al.,

        Defendants.

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of 28 U.S.C. § 636, and upon Defendants' Motion to Dismiss, [Docket No. 12], as well as, Plaintiff's Motion for Temporary Restraining Order. [Docket No. 18]. On January 25, 2023, the Court took the Motions under advisement on the parties' written submissions. (Order, [Docket No. 25]).

For the reasons discussed herein, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 12], be **GRANTED** and Plaintiff's Motion for Temporary Restraining Order, [Docket No. 18], be **DENIED**.

I.        Factual Background

Plaintiff Joshua Adam Brooks (hereinafter "Plaintiff") is a patient civilly committed to the Minnesota Sex Offender Program ("MSOP"). (Complaint, [Docket No. 1], at ¶ 2). Plaintiff initiated the present case by filing the Complaint[1] on August 15, 2022, pursuant to 42 U.S.C. § 1983, and is proceeding pro se. (Complaint, [Docket No. 1]). Plaintiff alleges that Defendants

---

[1] For the purposes of the present motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the Complaint as true and construes them in the light most favorable to Plaintiff. See Stodghill v. Wellston Sch. Dist., 512 F.3d 472, 476 (8th Cir. 2008).

David Lindlbauer, Jana Brister-Korby, Charles Fai, Mindy Seigert-Horgeshimer, and Scott Giannini violated his constitutional rights by failing to protect him against three fellow MSOP patients during his confinement between July 2020 and April 2022. (Id.). Plaintiff purports to sue Defendants in their individual and official capacities seeking compensatory and punitive damages, as well as, declaratory and injunctive relief. (Id. at ¶ 12).

Specifically, Plaintiff alleges that, in July 2020, he was housed in Complex Unit 1E, and made to share a cell with another MSOP civil committee, Byron Wegner. (Id. at ¶ 13). Shortly thereafter, Wegner began "openly masturbating and using homemade 'sex toys' on himself" while in the cell with Plaintiff. (Id.). Plaintiff reported the incident to "his clinician" at the time, Defendant David Lindlbauer, who did "absolutely nothing to help Plaintiff." (Complaint, [Docket No. 1], at ¶ 13). Plaintiff alleges that he once again reported Wegner's behavior to Defendant Lindlbauer, after Wegner's "sexual behavior" intensified during a 28-day COVID-facility lock-down," to which Defendant Lindlbauer responded, "'Masturbation is not sexually acting out, but it would be important for you and client Wegner to have a discussion around boundaries in the room.'" (Id.). Plaintiff alleges that he continued to report Wegner's "behavior" to Defendant Lindlbauer over the course of eight months, until it was eventually brought to the attention of clinical supervisor, Defendant Jana Brister-Korby. Plaintiff alleges, however, that Defendants "continued to disregard" his reports. (Id.).

At some point, Plaintiff was transferred from the cell he shared with Wegner and out of Complex Unit 1E. (Id. at ¶ 14). But Plaintiff alleges that he was "forced" to share a cell with a second MSOP civil committee, Duane Hart, and threatened with "sever[e] disciplinary action" if he failed to comply. (Id.). Plaintiff allegedly told his "[c]linician" that he "did not feel safe or comfortable moving in" with Hart because of "[Hart's] history of grooming and sexually assaulting

2

young men during his offenses," but was told that he had no choice because the cell assignment had already been made by Defendant Brister-Korby. (Complaint, [Docket No. 1], at ¶ 14).

On June 11, 2021, Plaintiff was "sleeping during the afternoon in the cell when [he] felt someone groping his penis above his clothing," and awoke to "Hart standing over him[,] groping him[,] and smiling." (Id.). On July 9, 2021, Plaintiff reported the incident to his clinician, "Kayla Taylor," during an individual treatment session. (Id.). As a result, a formal report was prepared. (Id.). Plaintiff alleges that, despite having "full access to and knowledge" that Hart had been the subject of "at least 3 previous investigations" where he was alleged to have "assault[ed] his roommates in the same manner Plaintiff was assaulted," Defendant Brister-Korby nevertheless "forc[ed] Plaintiff into the cell" with Hart without "tak[ing] any or all precautions." (Id.).

In February 2022, Plaintiff was transferred back to Complex Unit 1E. (Complaint, [Docket No. 1], at ¶ 14).

On April 13, 2022, Plaintiff alleges that a third MSOP civil committee, Gerald Raisch, threatened Plaintiff twice that day with "violence and severe bodily harm" and told Plaintiff he was going to assault him. (Id. at ¶ 15). That evening, Plaintiff reported the incident to a "supervisor," and was "moved to another unit." (Id.). However, the following day, on April 14, 2022, despite expressing "serious safety concerns" about being housed in Complex Unit 1E, Plaintiff was informed by Defendant Scott Giannini that he would have to return "or face severe disciplinary action." (Id.). Plaintiff requested that an "incompatibility" be placed between Plaintiff and Raisch "because of the severity of the threats," but Defendant Giannini refused. (Id.). Plaintiff alleges that Defendant Giannini placed Plaintiff's life in "great danger" by attempting to force him back to Complex Unit 1E and not safeguarding his safety, which was a violation of MSOP policy. (Complaint, [Docket No. 1], at ¶ 15).

3

Plaintiff alleges that the "fear for his safety" was so great that he ultimately told "staff" that he "would attempt suicide" to avoid "liv[ing] in fear everyday of other clients" in Complex Unit 1E. (Id. at ¶ 16). As a result, Plaintiff was transferred to the East Observation Unit where he was observed for 37 days. (Id.). During that time, Plaintiff met with different psychologists "on a daily basis only to asses[s] [his] levels of observation, not to provide any form of treatment." (Id.). According to Plaintiff, after three meetings to discuss his best treatment options, Plaintiff reported his concerns about being transferred back to Complex Unit 1E to his "current clinical team," which included Defendants Charles Fai, Mindy Seigert-Horgeshimer, and Scott Giannini, but was told "every week that [his] concerns were not valid, and that [he] was expected" to transfer back to the unit. (Id.). During a fourth meeting with Defendant Fai, Defendant Seigert-Horgeshimer, Defendant Giannini, "clinician Kayla Taylor," "Program Manager Steve Sajdak," and "Group Supervisor Blake Carey," Plaintiff reported his concerns once more about transferring back to Complex Unit 1E, offering alternatives for his living arrangements, but was told he would return to Complex Unit 1E upon leaving the East Observation Unit. (Complaint, [Docket No. 1], at ¶ 16). Plaintiff alleges that he received inadequate mental healthcare during that time and generally that the MSOP "fell short of minimal adequacy," was "in violation," and "was not just justified [in] ignoring Plaintiff[']s mental health concerns." (Id.).

Plaintiff also makes passing, superficial references to Defendants' failure to properly investigate his concerns; failure to furnish his incident reports to different MSOP supervisors for further investigations; failure to provide adequate training to "MSOP security counselors and clinicians" in writing incident reports; and failure to "embrace a policy or take other reasonable steps which may have prevented the harm." (Id. at ¶¶ 18-22).

4

In his Complaint, Plaintiff specifically alleges two claims against Defendants collectively: one count of deliberate indifference to Plaintiff's sexual assault and fear of violence in violation of the Eighth and Fourteenth Amendments; and one count of common law intentional infliction of emotional distress ("IIED") for keeping Plaintiff in Complex Unit 1E. (Id. at ¶¶ 23-32).

## II. Defendants' Motion to Dismiss. [Docket No. 12].

Defendants now move the Court for dismissal for lack of jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure; and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Def.'s Mem., [Docket No. 14]).

### A. Standards of Review

#### 1. Lack of Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to move to dismiss a pleading for lack of subject matter jurisdiction, challenging the sufficiency of the pleading on its face or the factual truthfulness of its allegations. See Branson Label, Inc. v. City of Branson, 793 F.3d 910, 914-15 (8th Cir. 2015). In a factual challenge, courts may consider matters outside of the pleadings, and no presumptive truthfulness attaches to the plaintiff's factual allegations. Osborn v. U.S., 918 F.2d 724, 729-30, n. 6 (8th Cir. 1990).

#### 2. Failure to State a Claim Upon Which Relief May Be Granted

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, the non-moving party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly,

5

550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but in contrast, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-67).

It follows that "[t]o survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice to state a claim to relief that is plausible on its face." Carton v. General Motor Acceptance Corp., 611 F.3d 451, 454 (8th Cir. 2010) (citations and internal quotation marks omitted). In addition to accepting all the factual allegations in the complaint as true, courts considering a Rule 12(b)(6) motion to dismiss draw all reasonable inferences in the plaintiff's favor, but courts are "not bound to accept as true a legal conclusion couched as a factual allegation." Carton, 611 F.3d at 454 (citations omitted); see Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998); Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 664. When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. See Iqbal, 556 U.S. at 678–81. Likewise, a Court need not accept as true wholly conclusory allegations couched as facts. Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999); see Bediako v. Stein Mart, Inc., 354 F.3d 835, 840 (8th Cir. 2004).

Lastly, while the Court is required to construe the content within Plaintiff's pleadings liberally as he is proceeding pro se, Plaintiff is nevertheless bound by applicable procedural and substantive law. See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). To be clear, "[a]lthough pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law," Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984), and they still must allege sufficient facts to support the claims advanced." Stone, 364 F.3d at 914 (internal citations omitted); see, e.g., Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law.").

**B. Analysis**

As stated above, in the present case, Plaintiff brings individual and official capacity claims against Defendants under 42 U.S.C. § 1983, asserting that Defendants violated his constitutional rights under the Eighth and Fourteenth Amendments to be protected from sexual assault and threats of violence by other MSOP clients, as well as, common law intentional infliction of emotional distress ("IIED") claims for being forced to remain in the unit at issue.

Before evaluating Plaintiff's claims of deliberate indifference and IIED, as alleged in the Complaint, the Court will first address the threshold jurisdictional consideration of whether it has subject matter jurisdiction to address these claims to the extent Plaintiff seeks monetary damages against Defendants in their official capacities. Pomerenke v. Bird, No. 12-cv-1757 (DSD/JJG), 2014 WL 30363, at *1 (D. Minn. Jan. 3, 2014) (citing Fed. R. Civ. P. 12(h)(3)) ("A court must dismiss an action over which it lacks subject matter jurisdiction.").

1. **Eleventh Amendment Immunity**

The Eleventh Amendment prohibits an action for monetary damages against a state unless it has unequivocally consented to suit or Congress has abrogated the states' immunity for a particular federal cause of action. Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1438 (8th Cir. 1996); Faibish v. University of Minnesota, 304 F.3d 797, 200 (8th Cir. 2002). States are entitled to Eleventh Amendment immunity from federal claims brought under Section 1983. See Hadley, 76 F.3d at 1438 ("Section 1983 does not override Eleventh Amendment immunity."). The immunity afforded a state in federal court extends to agencies of the state. Minnesota Pharmacists Ass'n v. Pawlenty, 690 F. Supp. 2d 809, 815 (D. Minn. 2010) (citing Florida Dep't of Health & Rehabilitative Sers. v. Florida Nursing Home Ass'n, 450 U.S. 147 (1982)). Similarly, a suit against a state employee in that person's official capacity constitutes a suit against the public employer, namely, the state itself. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999); Kentucky v. Graham, 473 U.S. 159, 165 (1985); Uland v. City of Winsted, 570 F. Supp. 2d 1114, 1119–20 (D. Minn. 2008); Baker v. Chisom, 501 F.3d 920, 924 (8th Cir. 2007); Bankhead v. Knickrehm, 360 F.3d 839, 844 (8th Cir. 2004). "The law is clear that, 'the real party in interest in an official capacity suit is the governmental entity and not the named official.'" Semler v. Ludeman, No. 9-cv-732 (ADM/SRN), 2010 WL 145275, at *6 (D. Minn. Jan 8, 2010) (citing Baker, 501 F.3d at 925); see Hafer v. Melo, 502 U.S. 21, 25 (1999). "It is well-settled that in a 42 U.S.C. § 1983 action, the Eleventh Amendment precludes an award of money damages against a state official acting in his or her official capacity. A plaintiff may maintain an action against a governmental official if the complaint seeks only injunctive or prospective relief." Semler, 2010 WL 145275, at *7 (citations omitted).

As employees of MSOP, Defendants David Lindlbauer, Jana Brister-Korby, Charles Fai, Mindy Seigert-Horgeshimer, and Scott Giannini are state officials. Latimer v. Smith, No. CV 16-3601 (MJD/DTS), 2018 WL 3979601, at *7 (D. Minn. July 20, 2018), report and recommendation adopted, No. CV 16-3601 (MJD/DTS), 2018 WL 3978112 (D. Minn. Aug. 20, 2018) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). The Court, therefore, necessarily construes Plaintiff's alleged § 1983 official capacity claims against Defendants as being alleged against the employing entity, the State of Minnesota.

As relief, Plaintiff seeks, among other things, monetary damages. However, liberally construing Plaintiff's Complaint and drawing all reasonable inferences in his favor, the record now before the Court is devoid of any evidence or authority demonstrating either the state's consent to suit or Congressional abrogation of the state's sovereign immunity.

Therefore, the Court recommends that Plaintiff's § 1983 claims seeking monetary damages as alleged against the Defendants sued in their official capacities be **DISMISSED without prejudice** for lack of subject matter jurisdiction. See Semler, 2010 WL 145275, at *7 ("[T]o the extent that Plaintiffs seeks monetary damages for actions taken by Defendants in their official capacities, these claims against Defendants are barred by the Eleventh Amendment[.]").

Accordingly, the only claims that remain before the Court are (1) Plaintiff's § 1983 deliberate indifference claim against Defendants in their individual capacities, (2) Plaintiff's § 1983 deliberate indifference claim against Defendants in their official capacities for non-monetary, injunctive and declaratory relief, and (3) Plaintiff's state law intentional infliction of emotional distress claim against Defendants in their individual and official capacities.

## 2. Plaintiff's § 1983 Failure-to-Protect Claim

Plaintiff specifically brings a deliberate indifference failure-to-protect claim pursuant to 42 U.S.C. § 1983 against each of the individual Defendants. For the relief he seeks under § 1983, Plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights." Jackson v. Nixon, 747 F.3d 537, 543 (8th Cir. 2014). Thus, to survive Defendants' Motion to Dismiss for failure to state a claim, Plaintiff must have alleged sufficient facts to show each individually named Defendants' personal involvement in the asserted constitutional violations with "more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." See Twombly, 550 U.S. at 555; see also Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir.1985); Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.").

### i. Defendants Fai and Seigert-Horgeshimer

Among others, Plaintiff has identified Charles Fai and Mindy Seigert-Horgeshimer as Defendants in this action. However, the only specific factual allegations related to either of these Defendants is that, while under observation and as part of his clinical team, Defendants Fai and Seigert-Horgeshimer were merely present during four meetings where Plaintiff reported his concerns about being transferred back to Complex Unit 1E. Plaintiff does not allege any specific factual allegation against Defendants Fai and Seigert-Horgeshimer as to how they were personally involved in or directly participated in the alleged constitutional violations he seeks to set forth in his Complaint. This is a failure to make the showing needed in the Complaint to allow Plaintiff's

§ 1983 claims against Defendants Fai and Seigert-Horgeshimer to proceed because it is devoid of any factual allegation to show any personal involvement.[2] See Twombly, 550 U.S. at 555.

Therefore, the Court recommends that Plaintiff's remaining § 1983 claims against Defendants Fai and Seigert-Horgeshimer, in their official and individual capacities, be **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

  ii.  *The Remaining Defendants*

Plaintiff also named David Lindlbauer, Scott Giannini, and Jana Brister-Korby as Defendants in the present case, alleging that they failed to protect him from three different MSOP committed patients.[3]

The Eighth Amendment to the United States Constitution prohibits the government from inflicting "cruel and unusual punishments" on persons convicted of crimes. See Rhodes v. Chapman, 425 U.S. 337, 344-46 (1981). A prison official (or, in the present case, an employee at a state civil commitment facility) may violate the Eighth Amendment if he or she is deliberately indifferent to the need to protect an inmate from a substantial risk of harm. Jackson v. Everett, 140 F.3d 1149, 1151 (8th Cir. 1998).

A prison official, or an employee at a state civil commitment facility, may violate the Eighth Amendment's prohibition from inflicting cruel and unusual punishments if he or she is "deliberately indifferent to the need to protect an inmate from a substantial risk of harm from other inmates." Sorenson v. Minn. Dep't of Human Servs., No. 14-cv-4193 (ADM/LIB), 2015 WL 251720, at *6 (D. Minn. Jan. 20, 2015) (citing Jackson v. Everett, 140 F.3d 1149, 1151 (8th Cir.

---

[2] For these same reasons, Plaintiff's deliberate indifference claim against Defendant Giannini based solely on his presence during these meetings also fails.
[3] While Plaintiff generally states in the Complaint that his deliberate indifference claim is proceeding under both the Eighth and Fourteenth Amendments, it is only the Eighth Amendment deliberate indifference standard of review that applies here. See Revels v. Vincenz, 382 F.3d 870, 874 (8th Cir. 2004) ("Although an involuntarily committed patient of a state hospital is not a prisoner per se, his confinement is subject to the same safety and security concerns as that of a prisoner."); see also Senty-Haugen v. Goodno, 462 F.3d 876, 889 (8th Cir. 2006).

1998)). For a plaintiff to successfully plead deliberate indifference, he or she must show that: "(1) when viewed objectively, the alleged deprivation of rights was sufficiently serious; and (2) the defendant, subjectively, had the requisite culpable state of mind." Id. "The deprivation is sufficiently serious when the official's failure to protect results in the inmate being incarcerated under conditions posing a substantial risk of serious harm." Id. "An official is deliberately indifferent when he or she actually knows of the substantial risk and fails to respond reasonably." Id.

1. DEFENDANT LINDLBAUER

In support of his deliberate indifference claim, Plaintiff alleges that he reported his cell mate's behavior of openly masturbating and using homemade sex toys on himself to Defendant Lindlbauer, who ignored his complaints or did "absolutely nothing" to help Plaintiff beyond advising him to have a discussion with his cell mate about "boundaries." However, Plaintiff has not alleged that he suffered any actual injury from this incident. The Eighth Circuit has made clear that the existence of some actual injury is required in Eighth Amendment cases. See e.g., Irving v. Dormire, 519 F.3d 441, 448 (8th Cir. 2008) ("Because a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation"); Ellis v. Bass, 982 F.2d 525 (8th Cir. 1992) (prisoner's de minimus injury insufficient to satisfy objective component of a failure to protect claim).

Therefore, without some physical contact or more than de minimus injury, the Court recommends dismissing without prejudice Plaintiff's remaining claims against Defendant Lindlbauer in both his official and individual capacity for failure to state a claim upon which relief can be granted.

2. DEFENDANT GIANNINI

Plaintiff alleges that, after being transferred out of Complex Unit 1E because of verbal threats from Raisch, Defendant Giannini both told Plaintiff that he would need to return to Unit 1E and refused to place an "incompatibility" status between Plaintiff and Raisch, despite Plaintiff's subjective safety concerns. However, according to the Complaint, Plaintiff never returned to Complex Unit 1E. Instead, Plaintiff alleges that he was transferred to the East Observation Unit for reporting that he would attempt suicide. Again, without alleging that he suffered any actual injury because of Defendant Giannini's action or inaction, Plaintiff's deliberate indifference claims against Defendant Giannini fail as well. See Irving, 519 F.3d at 448. Simply put, the possibility that an assault against Plaintiff <u>might</u> occur in a unit that he was <u>not</u> returned to is not a constitutional violation.

Therefore, the Court recommends dismissing without prejudice Plaintiff's claims against Defendant Giannini in both his official and individual capacity for failure to state a claim upon which relief can be granted.

3. DEFENDANT BRISTER-KORBY

The sole remaining Defendant then in this action is Jana Brister-Korby. In his Complaint, Plaintiff alleges that, despite being the subject of at least three prior investigations where Duane Hart purportedly sexually assaulted roommates, Defendant Brister-Korby forced Plaintiff to share a cell with Hart, resulting in Plaintiff eventually being sexually assaulted by Hart. After the assault, Plaintiff reported the incident, and a formal report was prepared. However, while there are a greater number of facts alleged regarding Defendant Brister-Korby, Plaintiff's Complaint still fails to allege sufficient facts to present a facially plausible claim for deliberate indifference by Defendant Brister-Korby.

The deliberate indifference standard articulated above requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." Kahle v. Leonard, 477 F.3d 544, 550 (8th Cir. 2007) (quoting Farmer, 511 U.S. at 837). If the risk was obvious, a fact finder may conclude that the prison official knew of the substantial risk. Id. at 552.

Here, Plaintiff fails to sufficiently allege any actual, subjective belief by Defendant Brister-Korby of a substantial risk to Plaintiff of sexual assault by Hart. "Deliberate indifference requires a showing that the official knew the risk existed, but disregarded it." Spruce v. Sargent, 149 F.3d 783, 785 (8th Cir. 1998). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. Plaintiff's allegation that Defendant Brister-Korby was simply or should have been aware that Hart had been the subject of three prior sexual assault investigations is alone insufficient to plausibly infer specific, actual knowledge by Brister-Korby of a serious, impending risk of a sexual assault by Hart on Plaintiff, and that Defendant deliberately disregarded that risk. To be liable for deliberate indifference, an "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." Id. at 837 (emphasis added). Plaintiff's Complaint is simply insufficient to plausibly plead Defendant Brister-Korby's actual knowledge or belief of Plaintiff's impending risk of a sexual assault by Hart, and as a result, Plaintiff's allegations do not "nudge" his claims against Defendant Brister-Korby "across the line from conceivable to plausible." Iqbal, 556 U.S. at 679–81.[7]

Therefore, the undersigned recommends dismissing without prejudice Plaintiff's remaining claims against Defendant Brister-Korby, both in her individual and official capacities, for failure to state a claim upon which relief can be granted.

For the foregoing reasons, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 12], be **GRANTED** pursuant to Rules 12(b)(1) and 12(b)(6) with respect to Plaintiff's §1983 claims of deliberate indifference as alleged against all Defendants.

### 3. Plaintiff's IIED Claim

Remaining before the Court are Plaintiff's state law claims of intentional infliction of emotional distress ("IIED") as alleged against Defendants in their official and individual capacities. Supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) by a federal court over state law claims may be exercised at the discretion of the district court. Glorvigen v. Cirrus Design Corp., 581 F.3d 737, 749 (8th Cir. 2009).

Because the Court recommends granting Defendants' Motion to Dismiss, [Docket No. 12], in its entirety with respect to his § 1983 claims of deliberate indifference as alleged in the Complaint against all Defendants, the Court also recommends declining to exercise supplemental jurisdiction over the remaining state law claim of IIED as alleged against the same Defendants. See Gregoire v. Class, 236 F.3d 413, 419-20 (8th Cir. 2000) (stating federal courts should exercise judicial restraint and avoid state law issues whenever possible).

**III. Plaintiff's Motion for Temporary Restraining Order. [Docket No. 18].**

Liberally construing his Motion for Temporary Restraining Order, [Docket No. 18], Plaintiff seeks an Order of this Court directing Charles Fai, Mindy Siegert-Horgeshimer, and Scott Giannini to not participate, have any communication with, or be part of Plaintiff's "treatment team" for the purpose of communicating with other MSOP staff to arrange his transfer to another unit. (Plf.'s Mot., [Docket No. 18]).

When considering a motion for a temporary restraining order or preliminary injunction, the Court considers four factors: (1) the probability that the moving party will succeed on the merits;

(2) the threat of irreparable harm to the moving party; (3) the balance of harms as between the parties; and (4) the public interest. S.J.W. ex rel Wilson v. Lee's Summit R7 Sch. Dist., 696 F.3d 771, 776 (8th Cir. 2012) (citing Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981)); Tom T., Inc. v. City of Eveleth, No. 3-cv-1197 (MJD/RLE), 2003 WL 1610779, at *3 (D. Minn. Mar. 11, 2003); see Watts v. Fed. Home Loan Mortgage Corp., No. 12-cv-692 (SRN/JSM), 2012 WL 1901304, at *3 n.3 (D. Minn. May 25, 2012) ("Courts in the Eighth Circuit apply the same standards to a request for a preliminary injunction and temporary restraining order.") (citing S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project, 877 F.2d 707, 708 (8th Cir. 1989); Jackson v. Nat'l Football League, 802 F. Supp. 266, 229 (D. Minn. 1992)); Callerons v. FSI Int'l, Inc., No. 12-cv-2120, 2012 WL 4097832, at *2 (D. Minn. Sept. 18, 2012) (explaining that these factors apply to both preliminary injunctions and temporary restraining orders). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Dataphase, 640 F.2d at 113.

Injunctive relief is extraordinary relief, and the burden of establishing the propriety of an injunction is on the movant. Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003); see, Roudachevski v. All-American Care Centers, Inc., 648 F.3d 701, 705 (8th Cir. 2011). A temporary restraining order or preliminary injunction cannot issue if the movant fails to demonstrate a likelihood of success on the merits. See Beeks v. CitiMortgage, Inc., No. 14-cv-4603 (MJD/HB), 2014 WL 5704205, at *5 (D. Minn. Nov. 5, 2014); Wickner v. Larson, No. 9-cv-940 (DWF/JJK), 2010 WL 98940, at *3 (D. Minn. Jan. 11, 2010); Mid-Am. Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 972 (8th Cir. 2005).

On the first factor of whether or not to issue a temporary restraining order, i.e., probability of success on the merits, the Court in Dataphase, "rejected the notion that the party seeking relief must show 'a greater than fifty percent likelihood that he will prevail on the merits,' holding instead that "where the balance of other factors tips decidedly toward plaintiff a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation." Planned Parenthood Minn. N.D., S.D. v. Rounds, 530 F.3d 724, 731 (8th Cir. 2008) (citing Dataphase, 640 F.2d at 113). Thus, the Eighth Circuit has instructed District Courts considering this factor to query whether the moving party has a "fair chance of prevailing." Id. at 732.

In the present case, Plaintiff fails to demonstrate that he has a "fair chance of prevailing" on his §1983 deliberate indifference claims. For the reasons fully discussed above, the Court has already concluded that Plaintiff either lacks subject matter jurisdiction or fails to plausibly allege his deliberate indifference claims raised in his Complaint. The Court will not repeat that analysis here. It is sufficient to state that the undersigned's recommendation that Defendants' Motion to Dismiss, [Docket No. 12], be granted and this matter be dismissed is sufficient to demonstrate that Plaintiff has failed to demonstrate he has a fair chance of prevailing on his claim.[4]

Therefore, the undersigned recommends that Plaintiff's Motion for Temporary Restraining Order, [Docket No. 18], be **DENIED**.

---

[4] The likelihood of success on the merits is the most important factor for a temporary restraining order or preliminary injunction; if a movant fails to meet this threshold inquiry, the Court need not consider the other Dataphase factors: irreparable harm, balance of equities, and public interest. See Gamble v. Minnesota State Indus., 16-cv-2720 (JRT/KMM), 2017 WL 6611570, at *3 (D. Minn. Dec. 1, 2017), adopted 16-cv-2720 (JRT/KMM), 2017 WL 6607396 (D. Minn. Dec. 27, 2017).

**IV.     Conclusion**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED**:

1. That Defendants' Motion to Dismiss, [Docket No. 12], be **GRANTED**, as set forth herein;

2. That Plaintiff's § 1983 official capacity claims seeking monetary damages as alleged against all Defendants be **DISMISSED without prejudice** for lack of subject matter jurisdiction;

3. That Plaintiff's § 1983 official capacity claims for injunctive and declaratory relief as alleged against all Defendants be **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted;

4. That Plaintiff's § 1983 individual capacity claims for monetary damages, injunctive relief, and declaratory relief as alleged against all Defendants be **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted;

5. That the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims of intentional infliction of emotional distress as alleged in the Complaint; and

6. That Plaintiff's Motion for Temporary Restraining Order, [Docket No. 18], be **DENIED**, as set forth herein.

Dated: March 24, 2023                                            s/Leo I. Brisbois
                                                                 Hon. Leo I. Brisbois
                                                                 United States Magistrate Judge

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).